MARTIN A. LITTLE, ESQ.
Nevada Bar No. 7067
mal@juww.com
MICHAEL R. ERNST, ESQ.
Nevada Bar No. 11957
mre@juww.com
JOLLEY URGA WOODBURY & LITTLE
3800 Howard Hughes Parkway, Suite 1600
Las Vegas, Nevada 89169
(702) 699-7500 Telephone
(702) 699-7555 Facsimile

WILL A. LEMKUL, ESQ.
Nevada Bar No. 6715
lemkul@morrissullivanlaw.com
MORRIS SULLIVAN LEMKUL & PITEGOFF
3770 Howard Hughes Parkway, Suite 170
Las Vegas, Nevada 89169
(702) 405-8100 Telephone
(702) 405-8101 Facsimile
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| VICKI PALIVOS, and GEORGE KLEANTHIS, individually and on behalf of all persons similarly situated, | Case No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| FEDERATION INTERNATIONALE FOOTBALL ASSOCIATION aka "FIFA"; MATCH HOSPITATLITY AG; MATCH SERVICES AG; INFRONT SPORTS & MEDIA; SPORTSMARK MANAGEMENT GROUP, LTD; CARTAN TOURS, INC., | |
| Defendants. | |

Plaintiffs Vicky Palivos ("Palivos") and George Kleanthis ("Kleanthis") (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated (the "Class" or the "Class Members"), bring this class action complaint against Defendants Federation Internationale de Football Association ("FIFA"), Match Hospitality AG ("Match Hospitality"), Match Services AG ("Match Services"), InFront Sports & Media ("InFront"), SportsMark Management Group, Ltd. ("SportsMark"), and Cartan Tours, Inc. ("Cartan") (collectively, "Defendants") and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys, as follows.

## INTRODUCTION

1.     Soccer is the world's most popular sport with approximately 3.5 billion fans worldwide.

2.     Soccer's international governing body, FIFA, is headquartered in Switzerland and for decades has identified itself as "world football's governing body".[1]  FIFA identifies itself as "the guardian of this most cherished game."

3.     According to FIFA's website, "Football is much more than just a game. Its universal appeal means it has a unique power and reach which must be managed carefully."

4.     Football's premier event is known as the "World Cup", which is held every four years in a different host country with the world's best 32 national teams competing over a period of one month for football's ultimate crown-World Cup Football Champion.

5.     Upon information and belief, on or about October 30, 2007, FIFA awarded the country of Brazil to serve as the host-country for the 2014 FIFA Men's World Cup.[2]

---

[1] The term "football" as used herein refers to what in the United States is often referred to as "Soccer", but everywhere else in the world is referred to as "football".

[2] A Women's World Cup is also held every four years, this year being held in Canada.

6.      Between June 12, 2014 and July 13, 2014, FIFA hosted the 2014 FIFA Men's World Cup-taking place in twelve different venues throughout Brazil (the "2014 World Cup").

7.      Upon information and belief, more than 3.4 million people attended the 2014 World Cup, traveling from countries from all over the world, including the United States. Upon further information and belief, Americans purchased more tickets—approximately 1.6 million—than citizens of any other country aside from the host-country of Brazil.

8.      The sale of these tickets, which were strategically and unlawfully marketed and sold by Defendants for several times their face value through material misrepresentations as set forth below, resulted in the Defendants receiving hundreds of millions of dollars, if not more, in profits from the American public.

9.      This class action complaint seeks restitution for the wrong FIFA and its various sports marketing and ticketing companies, Defendants herein, visited upon the Class Members through their collaboration, price fixing scheme, and conspiracy to inflate ticket prices.

## PARTIES, JURISDICTION AND VENUE

10.     Vicky Palivos is an individual and a resident and citizen of Henderson, Nevada.

11.     George Kleanthis is an individual and a resident and citizen of Naperville, Illinois.

12.     FIFA is an entity registered under Swiss law and headquartered in Zurich, Switzerland.

13.     Match Hospitality is an entity headquartered in Zurich, Switzerland and has offices across Europe and South America.

14.     Match Services is an entity headquartered in Zurich, Switzerland.

15.     InFront is an entity headquartered in Zurich, Switzerland and has offices throughout Europe and Asia.

JOLLEY URGA attorneys
WOODBURY & LITTLE at law
3800 HOWARD HUGHES PARKWAY, SUITE 1600, LAS VEGAS, NV 89169
TELEPHONE: (702) 699-7500 FAX: (702) 699-7555

395535

16.     SportsMark is a corporation incorporated under the laws of Delaware with its principal place of business in California.

17.     Cartan is a corporation incorporated under the laws of Delaware with its principal place of business in California.

18.     Plaintiffs are informed and believe that, at all pertinent times mentioned herein, there was a unity of interest and ownership among Defendants, such that one was inseparable from the other, and that Defendants were and are the alter-egos and agents of each other, in that Match Hospitality, Match Services, InFront, SportsMark and Cartan were mere shells, instrumentalities and conduits through which FIFA carried on its business as if Match Hospitality, Match Services, InFront, SportsMark and Cartan did not exist, exercising complete control and dominance of such businesses to such an extent that any individuality or separateness of Match Hospitality, Match Services, InFront, SportsMark and Cartan, on the one hand, and FIFA, on the other hand, does not, and at all times mentioned herein, did not exist. Adherence to the fiction of a separate existence of Match Hospitality, Match Services, InFront, SportsMark and Cartan as entities distinct from FIFA would permit an abuse of corporate privilege and would sanction fraud and promote great inequity and injustice in that it would prevent Plaintiffs and the Class Members from recovering the full amounts that are justly due as pled herein.

19.     During all times relevant to this action, Match Hospitality, Match Services, InFront, SportsMark and Cartan were and are the agents and/or employees of FIFA, and the acts alleged herein were committed in the course and scope of such agency and/or employment and in the course of the very tasks assigned to them by FIFA. Match Hospitality, Match Services, InFront, SportsMark and Cartan were aided in their commission of the acts alleged herein by

JOLLEY URGA attorneys
WOODBURY & LITTLE at law
3800 HOWARD HUGHES PARKWAY, SUITE 1600, LAS VEGAS, NV 89169
TELEPHONE: (702) 699-7500 FAX: (702) 699-7555

395535

their agency relationship with FIFA, and, therefore, FIFA is responsible for the acts alleged herein.

20.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337, and/or 18 U.S.C. § 1964.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, 18 U.S.C. § 1965, and/or 15 U.S.C. § 22.

## GENERAL ALLEGATIONS

22.     FIFA is the international body governing organized football. FIFA is composed of as many 209 member associations, each representing organized football in a particular nation or territory, including the United States. The United States first became affiliated with FIFA in 1914. At various times relevant to the Complaint, FIFA maintained offices in both Zurich, Switzerland and elsewhere in the world, including the United States, where FIFA has maintained a development office since at least 2011.

23.     In an effort to maximize revenues and profits associated with the 2014 World Cup, FIFA entered into contracts with sports marketing companies to commercialize the media and marketing rights to the 2014 World Cup. These sports marketing companies, including multinational corporations with headquarters, offices, or affiliates located in the United States, often acquired an array of media and marketing rights, including hospitality rights and ticketing rights. These sports marketing companies often sold these rights to, among others, sub-licensees and distributors, including those located in the United States.

24.     The revenue generated by the commercialization of the media and marketing rights associated with football constituted an essential source of revenues and profits for the enterprise. The United States was an increasingly important and lucrative market for the commercialization of these rights.

395535

25.     Specifically, FIFA appointed Defendant Match Hospitality as the worldwide exclusive rights holder of the FIFA Hospitality Programme, which included the sale of match tickets to the 2014 World Cup. Through this appointment, Match Hospitality was the only company worldwide that was officially authorized by FIFA to offer and guarantee exclusive hospitality packages *(i.e.* match tickets, hotel accommodations, and a host of other services set forth more fully below) for every match of the 2014 World Cup, directly or through its appointed sales agents.

26.     Match Hospitality is owned in part by Defendant InFront, a company whose president and CEO, Philippe Blatter, is the nephew of FIFA's outgoing president, Sepp Blatter.

27.     Match Hospitality, in turn, appointed Defendant SportsMark as its exclusive sales agent in the United States for the 2014 World Cup.

28.     SportsMark, in turn, appointed Defendant Cartan as its authorized sub-agent in the United States for the 2014 World Cup. Cartan's sports' division, Cartan Global, specialized in ticket sales to smaller groups in the United States and touted itself as providing "exclusive and official travel and ticketing services" to the 2014 World Cup.

29.     Under Brazilian law, specifically article 41-F of Law No. 10671/2003, often referred to as the Brazilian "Fan Statute", the resale of a sporting ticket at a price superior to the face value on the ticket is prohibited and subject to civil sanctions and possible criminal penalties. This law applied to all sporting tickets sold in the 2014 World Cup.

30.     Moreover, FIFA's own governing rules and regulations prohibit the sale of match tickets for more than their face value. According to article 16 of the "FIFA World Cup General Law", anyone who sells, offers, exposes for sale, negotiates, deviates or transfers tickets to the 2014 FIFA World Cup Brazil or uses tickets to the 2014 FIFA World Cup Brazil for advertising, sales or promotional purposes, as competition or sweepstakes prizes or uses the ticket

JOLLEY URGA | attorneys
WOODBURY & LITTLE | at law
3800 HOWARD HUGHES PARKWAY, SUITE 1600, LAS VEGAS, NV 89169
TELEPHONE: (702) 699-7500   FAX: (702) 699-7555

395535

availability for advertisement for these purposes is subject to civil sanctions and criminal penalties. Even more restrictive, Section 4.1 of the "2014 FIFA World Cup Brazil™ General Terms and Conditions for the Use of Tickets" states: "TICKET HOLDERS MAY NOT SELL, OFFER FOR SALE, OFFER AT AUCTIONS, RESELL, DONATE, ACT AS COMMERCIAL AGENT FOR ANOTHER PARTY OR OTHERWISE TRANSFER THEIR TICKETS IN ANY WAY WITHOUT THE SPECIFIC PRIOR WRITTEN CONSENT OF FIFA."

31.     Upon information and belief, there may be additional FIFA rules and regulations that prevent the resale of World Cup tickets for a profit, which means selling a sporting event ticket for a price higher than the "face value".

32.     Recognizing the increasing popularity of the sport and intense demand for tickets within the United States, however, FIFA and the other Defendants herein sought to circumvent these restrictions on ticket sale prices by bundling tickets into what are referred to as "hospitality packages".

33.     According to SportsMark (FIFA's exclusive sales agent in the United States), this official hospitality program offered "corporate buyers, groups, and individual fans a unique chance to experience one of the world's most spectacular sporting events and the beauty of Brazil through a wide range of hospitality options in the most exclusive settings". SportsMark's website advertised and promoted those "hospitality" options to include:

- •     The best match tickets, located in Category 1 seating or suites

- •     World-class hospitality with excellent food and beverage

- •     Exclusive commemorative gifts and deluxe hospitality kit

- •     Dedicated welcome area with multilingual hosts and hostesses

- •     Preferential stadium parking

34.   By grouping match tickets into this bundle of services, Defendants were able to disguise their unlawful sale of tickets at more than face value, deceiving American consumers and generating hundreds of millions of dollars in additional revenues and profits from Class Members. Also, in furtherance of the conspiracy to defraud American consumers, the Defendants used the media to announce that "match tickets were sold out", except for the tickets in the possession of the Defendants and/or their agents and distributors. In fact, these announcements were false. However, the Defendants made these announcements in order to "create a demand" for tickets, which was later used to create a "limited supply, high demand" situation. This manufactured market condition was then used by the Defendants to "substantially mark up" the prices for tickets sold to Americans. This amounted to price fixing in violation of American, Brazilian and FIFA's laws and regulations.

35.   If American consumers had known that the Defendants were conspiring to price fix and "to inflate" the price of event tickets in violation of FIFA's and Brazil's regulations and laws, they would not have purchased event tickets at a price that was substantially higher than the tickets' face value. However, because American consumers did not know of this conspiracy by the Defendants, they purchased event tickets from the Defendants and their distributors and agents, at a price that was substantially higher than the tickets' face value.

36.   Plaintiff Palivos made numerous attempts to buy tickets to the 2014 World Cup for the tickets' face value. However, when she contacted the Defendants she was informed that most of the tickets were "sold out", and if she wanted tickets for the 2014 World Cup matches she would have to pay a price that was substantially higher than the tickets' face value. Following these representations, Palivos could not find any tickets for any 2014 World Cup matches for the tickets' face value from the Defendants. Therefore, Palivos reluctantly bought four tickets from Defendants on March 17, 2014 for the Spain vs. Chile match that was to be

JOLLEY URGA attorneys WOODBURY & LITTLE at law
3800 HOWARD HUGHES PARKWAY, SUITE 1600, LAS VEGAS, NV 89169
TELEPHONE: (702) 699-7500   FAX: (702) 699-7555

395535

JOLLEY URGA | attorneys
WOODBURY & LITTLE | at law
3800 HOWARD HUGHES PARKWAY, SUITE 1600, LAS VEGAS, NV 89169
TELEPHONE, (702) 699-7500  FAX, (702) 699-7555

played on June 18, 2014 at the Maracana Stadium in Rio de Janeiro, Brazil. The face value for the four tickets that Palivos purchased was $135 (USD) for each ticket. Therefore, the face value cost for the four tickets should have been $540 (USD). However, because of the Defendants' price fixing, conspiracy and fraud, Palivos paid $736 (USD) per ticket, for a total of $2,944 (USD) for all four tickets. This amounted to a 445% ticket price mark up.

37.     Plaintiff Kleanthis likewise made numerous attempts to buy tickets to the 2014 World Cup for the tickets' face value. Kleanthis first attempted to purchase tickets directly from FIFA's website, www.FIFA.com, in the fall of 2013 during the "first phase"[3] of ticket sales. Despite his efforts, Kleanthis was unsuccessful in securing tickets in the first phase. Thereafter, Kleanthis attempted to purchase tickets in December 2013 during the second phase. Shortly after that drawing, Kleanthis was again informed that he was unsuccessful in securing tickets. Kleanthis made his final attempt to purchase tickets from FIFA during the third and final phase of the "ticket lottery", but was again unsuccessful in doing so. When final online sales were released by FIFA, all of the matches that Kleanthis was interested in attending were immediately displayed on FIFA's website as "Sold Out".

38.     Kleanthis continued his efforts to secure tickets and, after consulting FIFA's website, was referred to FIFA's "official authorized agent", Match Hospitality. Kleanthis contacted Match Hospitality but was in turn referred to its authorized U.S. agent, SportsMark. Kleanthis contacted SportsMark and was quoted ticket prices well above the tickets' stated face value. Frustrated and disappointed, Kleanthis began researching other available options through various services online. Due to FIFA's uniform misrepresentations that tickets were otherwise "sold out", Kleanthis eventually settled on purchasing four tickets for the Argentina vs. Bosnia-

---

[3] According to FIFA's "Frequently Asked Questions for International Residents", FIFA sought to "ensure a fair and transparent allocation of Tickets" by dividing the procedure for ticket allocation into *three* phases. The **first** phase for this "ticket lottery" ran from August 20, 2013 through November 28, 2013. The **second** phase ran from

395535

JOLLEY URGA | attorneys
WOODBURY & LITTLE | at law
3800 HOWARD HUGHES PARKWAY, SUITE 1600, LAS VEGAS, NV 89169
TELEPHONE: (702) 699-7500   FAX: (702) 699-7555

Herzegovina match that was to be played on June 15, 2014 in Rio de Janeiro, Brazil. The face value for the four tickets that Kleanthis purchased was $135 (USD) for each ticket. Therefore, the face value cost for the four tickets should have been $540 (USD). However, because of the Defendants' price fixing, conspiracy and fraud, Kleanthis paid $725 (USD) per ticket, for a total of $2,900 (USD) for all four tickets. This amounted to a 437% ticket price mark up, which nevertheless was still less expensive than the ticket prices initially quoted by SportsMark for the same tickets.

39.     According to FIFA's published income statement for the 2011-2014 financial period, FIFA had total revenues of $5.718 billion, 70% of which ($4.008 billion) was attributable to the sale of television and marketing rights to the 2014 World Cup. FIFA's profits during this same period were $338 million. According to FIFA, approximately 90 percent of FIFA's revenue is generated through the sale of television, marketing, hospitality and licensing rights for the FIFA World Cup. Therefore, the Defendants made hundreds of millions of dollars by defrauding American consumers, including Plaintiffs and the Class Members.

## CLASS ALLEGATIONS

40.     Plaintiffs bring this action pursuant to FRCP 23 on behalf of themselves and a class of similarly situated persons and entities, defined as "all persons and entities residing in the United States who purchased tickets to attend one or more matches of the 2014 World Cup in Brazil via FIFA's authorized United States sales agents offering official 'hospitality' packages".

41.     The Class consists of hundreds of thousands, likely millions, of individuals and other entities, making joinder impractical. The exact size of the respective Class and the identities of the individual members thereof are ascertainable through Defendants' records, including but not limited to billing and account records.

December 8, 2013 through April 1, 2014. The **third** and final phase to purchase tickets during the "Last Minute Sales Phase" began on April 15, 2014 and ended on the final day of match competition, July 13, 2014.

395535

JOLLEY URGA | attorneys
WOODBURY & LITTLE | at law
3800 HOWARD HUGHES PARKWAY, SUITE 1600, LAS VEGAS, NV 89169
TELEPHONE: (702) 699-7500   FAX: (702) 699-7555

42.     The claims of Plaintiffs are typical of the claims of the respective Class. The claims of Plaintiffs and the respective Class are based on the same legal theories and arise from the same actionable conduct, resulting in the same injury to Plaintiffs and the respective Class. The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class claims would be impracticable and individual litigation would be unduly burdensome to the courts. Plaintiffs and members of the Class have suffered irreparable harm as a result of Defendants' actionable conduct. Because of the size of the individual Class claims, most Class members could not afford to seek legal redress for the wrongs identified in this Complaint. Without the class action vehicle Defendants would be permitted to retain the proceeds of their wrongful conduct. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Absent a class action, most of the respective class members would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. The litigation without a class would allow litigation claims that, in view of the expense of the litigation, may be insufficient in amount to support separate actions. Lastly, the prosecution of separate actions by individual members of the class would create a risk of:

a.     Inconsistent or varying adjudications with respect to individual membersof the respective Class which would establish incompatible standards of conduct for the party opposing the respective Class; and

395535

b.      Adjudications with respect to individual members of the respective Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

43.     There are several questions of law and fact common to the claims of Plaintiffs and the Class Members. All of the Class Members' claims are based upon the same facts and circumstances. Those common questions predominate over any questions that may affect individual Class Members. Common questions include, but are not necessarily limited to:

a.      Whether Defendants engaged in conduct actionable under the RICO statute;

b.      Whether Defendants engaged in conduct actionable under antitrust law;

c.      Whether Defendants made material misrepresentations to the Class Members regarding the availability of tickets;

d.      Whether Defendants combined and conspired to price fix and mislead the Class Members into purchasing tickets at artificially inflated prices, well in excess of the tickets' face values;

e.      Whether Defendants combined, participated and executed a scheme that artificially inflated prices and manipulated American consumers into purchasing tickets at these inflated prices; and

f.      Whether Plaintiffs and the Class Members are entitled to damages, attorneys' fees, and/or costs.

44.     Plaintiffs will fairly and adequately represent and protect the interest of the members of the respective Class. Plaintiffs have retained counsel with experience in prosecuting complex litigation. Plaintiffs and Plaintiffs' counsel are committed to vigorously prosecuting this

JOLLEY URGA | attorneys
WOODBURY & LITTLE | at law
3800 HOWARD HUGHES PARKWAY, SUITE 1600, LAS VEGAS, NV 89169
TELEPHONE: (702) 699-7500  FAX: (702) 699-7555

395535

action on behalf of the other respective Class Members, and have the financial resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other respective Class Members.

## FIRST CLAIM FOR RELIEF

### (Civil RICO Violation)

45.     Plaintiffs and the Class Members repeat and reallege the allegations contained in each and every preceding paragraph as though fully set forth herein.

46.     This cause of action asserts claims against Defendants for violations of 18 U.S.C. § 1962(c) for conducting the marketing, distribution, and sales of tickets to the 2014 World Cup (the "Enterprise") through a "pattern of racketeering activity."

47.     During all times relevant to this action, Defendants, Plaintiffs, and Class Members were and are each a "person," as that term is defined in 18 U.S.C. § 1961(3).

48.     During all times relevant to this action, Plaintiffs and the Class Members were and are each a "person injured in his or her business or property" by reason of a violation of RICO within the meaning of 18 U.S.C. § 1964(c).

49.     During all times relevant to this action, each of the Defendants was, and is, a "person" who conducted the affairs of the "Enterprise" described below, through the "pattern of racketeering activity" described below. While each of the Defendants participated in the Enterprise, each Defendant has an existence separate and distinct from the Enterprise. Further, the Enterprise is separate and distinct from the "pattern of racketeering activity" in which Defendants has engaged and is engaging.

50.     During all times relevant to this action, each of the Defendants was associated with, operated or controlled the Enterprise, and each of the Defendants participated in the operation and management of the affairs of the Enterprise, through a variety of actions described

JOLLEY URGA attorneys at law
WOODBURY & LITTLE
3800 HOWARD HUGHES PARKWAY, SUITE 1600, LAS VEGAS, NV 89169
TELEPHONE: (702) 699-7500  FAX: (702) 699-7555

395535

herein. Each of the Defendants' participation in the Enterprise is necessary for the successful operation of Defendants' scheme.

*1. "The Enterprise"*

51.     Section 1961(4) of RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

52.     The following "persons", defined by Section 1961(3) of RICO as individuals or entities capable of holding a legal or beneficial interest in property, and others presently unknown, have been members of and constitute an "enterprise" within the meaning of RICO, which are referred to herein collectively as the "Enterprise":

    a.     FIFA

    b.     Match Hospitality AG

    c.     Match Services AG

    d.     InFront Sports & Media

    e.     SportsMark Management Group, Ltd.

    f.     Cartan Tours, Inc.

53.     The "Enterprise" is an association-in-fact within the meaning of 18 U.S.C. 1961(4) and consists of a group of "persons" associated together for the common purpose of employing the multiple deceptive, abusive and fraudulent acts described herein. The Enterprise is an ongoing organization with an ascertainable structure, and a framework for making and carrying out decisions, that functions as a continuing unit with established duties, and that is separate and distinct from the pattern of racketeering activity in which Defendants have engaged and are engaging. The Enterprise was used as a tool to effectuate the pattern of racketeering activity.

54.     Specifically, Defendants conspired to price fix ticket prices for the 2014 World Cup, and manipulated market conditions for tickets, in order to artificially inflate ticket prices which they controlled, in violation of American, Brazilian, and FIFA's laws and regulations.

55.     The Enterprise is an ongoing enterprise that engages in, and whose activities affect, interstate commerce by, among other things, marketing, advertising, selling, or providing hundreds of thousands, if not millions, of tickets to entities and individuals throughout the United States, as described herein. The Enterprise began by at least January 1, 2010 and presently continues to operate as a single continuing unit.

56.     The overarching purpose of the Enterprise was to defraud hundreds of thousands, if not millions, of American consumers, while benefitting the Defendants hundreds of millions of dollars in ill-obtained profits.

**2.      "The Predicate Acts" (Mail Fraud, Wire Fraud, Violation of Travel Act, Laundering of Monetary Instruments)**

57.     Section 1961(1) of RICO provides that "racketeering activity" is, among other things, any act indictable under any of the provisions of title 18, United States Code, including § 1341 (mail fraud), § 1343 (wire fraud), § 1952 (travel act), and § 1956 (money laundering).

58.     As set forth below, to carry out, or attempt to carry out their scheme to defraud, Defendants have engaged in, and continue to engage in, the affairs of the Enterprise through the following pattern of racketeering activity:

a.      In violation of Section 1341, Defendants and their co-conspirators devised and implemented a scheme to defraud the American consumer, obtaining money by means of false or fraudulent pretenses through the sale of substantially inflated 2014 World Cup ticket prices and delivery of said tickets, which contain security chips and thus could not be printed by

JOLLEY URGA | attorneys
WOODBURY & LITTLE | at law
3800 HOWARD HUGHES PARKWAY, SUITE 1600, LAS VEGAS, NV 89169
TELEPHONE: (702) 699-7500  FAX: (702) 699-7555

395535

1  the consumer, by use of the mails on a number of occasions currently unknown to the Plaintiffs

2  and Class Members, but likely in the thousands, if not more;

3         b.     In violation of Section 1343, Defendants and their co-conspirators devised

4  and implemented a scheme to defraud the American consumer through use of the wires, utilizing

5  electronic communications to advertise, offer, and sell 2014 World Cup tickets whose prices

6  were artificially raised and inflated substantially beyond face value, obtaining money by means

7  of false or fraudulent pretenses on a number of occasions currently unknown to the Plaintiffs and

8  Class Members, but likely in the thousands, if not more;

9

10         c.     In violation of Section 1952, Defendants utilized the mail or any facility in

11  interstate and/or foreign commerce with the intent to distribute the proceeds earned from the

12  above described mail and wire fraud, and to otherwise promote, manage, establish, or carry on

13  the above unlawful activity, and thereafter continued to defraud the American consumers by

14  selling 2014 World Cup tickets at artificially inflated prices; and

15

16         d.     In violation of Section 1956, Defendants have participated in financial

17  transactions through the receipt and deposit of money, representing the proceeds of the above

18  detailed unlawful activity, with the intent to promote the carrying on of such unlawful activity.

19  **3. "The Pattern of Racketeering Activity"**

20

21       59.     As set forth herein, Defendants have engaged in a "pattern of racketeering

22  activity," as defined in 18 U.S.C. § 1961(5), by committing or conspiring to commit at least two

23  acts of racketeering activity, described above, within the past 10 years.

24       60.     Defendants have engaged in a scheme to defraud consumers, including Plaintiffs

25  and the Class Members, through fraudulent misrepresentations, price fixing, knowing

26  concealments, suppressions and omissions of material fact in their marketing materials, on their

27  website, in telephone and electronic communications with Plaintiffs and the Class Members, and

28

JOLLEY URGA | attorneys
WOODBURY&LITTLE | at law
3800 HOWARD HUGHES PARKWAY, SUITE 1600, LAS VEGAS, NV 89169
TELEPHONE: (702) 699-7500   FAX: (702) 699-7555

395535

in other advertisements, with the use of United States mail, interstate telecommunication systems, and interstate electronic communication systems, for the purpose of executing their scheme.

61.     Defendants' scheme to defraud was knowingly made and reasonably calculated with the intent to deceive and defraud persons of ordinary prudence and comprehension, including Plaintiffs and the Class Members.

62.     Defendants' scheme to defraud was made with intent to induce reliance by Plaintiffs and the Class Members upon such misrepresentations, concealments, suppressions, or omissions.

63.     Defendants' scheme to defraud was made with the purpose of gaining hundreds of millions, potentially billions, of dollars in profits from customers, including Plaintiffs and the Class Members, that would not have been gained but for Defendants' acts and omissions alleged herein.

64.     As detailed below, Defendants' fraudulent scheme and conspiracy consisted of, among other things: Price fixing ticket prices for the 2014 World Cup, and manipulated market conditions for tickets, in order to artificially inflate ticket prices which they controlled, in violation of American, Brazilian, and FIFA's laws and regulations.

65.     The above-described racketeering activities amount to a common course of conduct intended to deceive and harm Plaintiffs and the Class Members. Each such racketeering activity is related, has a similar purpose, involves the same or similar participants and methods of commission, and has similar results affecting similar victims, including Plaintiffs and the Class Members. These acts pose a threat of continued racketeering activity and constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

66.   Many of the precise dates and times of Defendants' violations of the above-referenced statutes are not known. Indeed, an essential part of the successful operation of the illegal sales and marketing schemes alleged herein depended upon secrecy and Defendants took deliberate steps to disguise and conceal their wrongdoing. However, given the massive scope of the illegal and fraudulent schemes, Defendants likely committed thousands, if not millions, of predicate acts of "racketeering activity."

67.   Plaintiffs and the Class Members' injuries are directly and proximately caused by Defendants' racketeering activity as described herein.

68.   Plaintiffs and the Class Members have standing to sue Defendants under 18 U.S.C. § 1964(c) and to recover compensatory damages, treble damages, and the costs of suit, including reasonable attorneys' fees.

69.   Plaintiffs and the Class Members have been required to retain attorneys to bring this action, and, as a direct, natural, and foreseeable consequence thereof, have been damaged thereby. Plaintiffs and the Class Members are therefore entitled to recover their reasonable attorneys' fees and costs of suit.

70.   Upon information and belief, there have been numerous other predicate acts by Defendants that are presently unknown to Plaintiffs and the Class Members.

**SECOND CLAIM FOR RELIEF**

**(Violation of Section 1 of the Sherman Act)**

71.   Plaintiffs and the Class Members repeat and reallege the allegations contained in each and every preceding paragraph as though fully set forth herein.

72.   Beginning at a time presently unknown to Plaintiffs and the Class Members, but at least as early as October 30, 2007 (the date that Brazil was awarded the 2014 World Cup) and continuing through at least July 14, 2014, the exact dates being unknown to Plaintiffs and the

Class Members, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or manipulate prices for tickets to Americans to attend the 2014 World Cup, in violation of Section 1 of the Sherman Act, 15 U.S.C. §l.

73.     In formulating and carrying out the alleged agreement, understanding, and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

a.     To limit methods by which American Consumers could purchase tickets to the 2014 World Cup;

b.     To artificially create a shortage of tickets made available to the American public;

c.     To falsely claim that match tickets were "sold out" when, in fact, thousands of tickets were available;

d.     To engage in a pattern of only selling tickets at a substantial mark up to the tickets' face value, a per se price-fixing violation of the Sherman Act; and

e.     To participate in schemes that increased the price of match tickets, and to refuse to sell these same tickets to American consumers, including Plaintiffs and the Class Members, unless they agreed to pay these artificially inflated ticket prices.

74.     The combination and conspiracy alleged herein has had the following effects, among others:

a.     Price competition in the sale of tickets to the 2014 World Cup was restrained, suppressed, and/or entirely eliminated in the United States;

JOLLEY URGA
WOODBURY & LITTLE | attorneys at law
3800 HOWARD HUGHES PARKWAY, SUITE 1600, LAS VEGAS, NV 89169
TELEPHONE: (702) 699-7500   FAX: (702) 699-7555

b.       Prices for 2014 World Cup tickets sold by Defendants and their co-conspirators have been fixed, raised, maintained and/or manipulated at artificially high, noncompetitive levels throughout the United States;

c.       Those individuals and entities in the United States who purchased tickets to the 2014 World Cup directly or indirectly from Defendants, their co-conspirators, or the "manipulated market place", have been deprived of the benefits of free and open competition;

d.       The Defendants made false representations to American consumers regarding the number of available tickets for the 2014 World Cup matches in order to artificially inflate ticket prices;

e.       The Defendants refused to sell 2014 World Cup tickets to American consumers, including Plaintiffs and the Class Members, unless and until said consumers agreed to pay ticket prices that were much higher than the tickets' face value; and

f.       The scheme interfered with the setting of retail ticket prices by free market forces.

75.       Plaintiffs and the Class Members have been injured in their business or property by paying more for the 2014 World Cup tickets than they would have paid in the absence of the combination and conspiracy by Defendants.

76.       Plaintiffs and the Class Members have been required to retain attorneys to bring this action, and, as a direct, natural, and foreseeable consequence thereof, have been damaged thereby. Plaintiffs and the Class Members are therefore entitled to recover their reasonable attorneys' fees and costs of suit.

/ / /

/ / /

/ / /

395535

**THIRD CLAIM FOR RELIEF**

**(Violation of Section 2 of the Sherman Act)**

77.     Plaintiffs and the Class Members repeat and reallege the allegations contained in each and every preceding paragraph as though fully set forth herein

78.     Beginning at a time presently unknown to Plaintiffs and the Class Members, but at least as early as October 30, 2007 (the date that Brazil was awarded the 2014 World Cup) and continuing through at least July 14, 2014, the exact dates being unknown to Plaintiffs and the Class Members, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or manipulate prices for tickets to Americans to attend the 2014 World Cup, in an attempt to monopolize, or in completing the offense of monopolization, in violation of section 2 of the Sherman Act.

79.     The market for 2014 World Cup tickets includes the entirety of the United States.

80.     Defendants and their co-conspirators agreed to limit the sources from which 2014 World Cup tickets could be purchased, thus gaining one hundred percent of the market share.

81.     In agreeing to limit the sources of available ticket sales, Defendants and their co-conspirators prevented the possibility of any competitor entering the market.

82.     Defendants intended to limit the options of American Consumers such that they could fix, raise, maintain and/or manipulate at artificially high, noncompetitive levels the price of 2014 World Cup tickets.

83.     Defendants successfully monopolized the market for 2014 World Cup ticket sales in the United States through their exclusionary conduct, forcing purchasers to do something they would not do in a competitive market—pay prices substantially over face value.

JOLLEY URGA WOODBURY & LITTLE | attorneys at law
3800 HOWARD HUGHES PARKWAY, SUITE 1600, LAS VEGAS, NV 89169
TELEPHONE: (702) 699-7500 FAX: (702) 699-7555

395535

84.    Plaintiffs and the Class Members have been injured in their business or property by paying more for the 2014 World Cup tickets than they would have paid in the absence of the combination and conspiracy to monopolize by Defendants.

85.    Plaintiffs and the Class Members have been required to retain attorneys to bring this action, and, as a direct, natural, and foreseeable consequence thereof, have been damaged thereby. Plaintiffs and the Class Members are therefore entitled to recover their reasonable attorneys' fees and costs of suit.

### FOURTH CLAIM FOR RELIEF

### (Violation of Section 3 of the Clayton Act)

86.    Plaintiffs and the Class Members repeat and reallege the allegations contained in each and every preceding paragraph as though fully set forth herein.

87.    Defendants and their co-conspirators agreed to limit the sources from which American consumers could purchase 2014 World Cup tickets.

88.    FIFA, through a phased lottery system, sold a small percentage of all available tickets on its own website. A very limited number of consumers desiring to purchase tickets were able to procure them through FIFA's website.

89.    All other tickets which were for sale were exclusively sold by Match Hospitality, who assigned SportsMark as its exclusive sales agent in the United States for the 2014 World Cup.

90.    SportsMark in turn assigned Cartan as its authorized sub-agent in the United States for the 2014 World Cup.

91.    Defendants forced consumers to purchase "hospitality" packages if they wanted to purchase 2014 World Cup tickets, consisting of the match tickets, world-class food and

JOLLEY URGA WOODBURY&LITTLE | attorneys at law
3800 HOWARD HUGHES PARKWAY, SUITE 1600, LAS VEGAS, NV 89169
TELEPHONE: (702) 699-7500  FAX: (702) 699-7555

395535

beverages, commemorative memorabilia and deluxe hospitality kit, and a dedicated welcome area and parking at the stadium.

92.     Plaintiffs and Class Members could not purchase standalone 2014 World Cup tickets outside of these packages.

93.     Defendants conditioned the purchase of 2014 World Cup tickets on the purchase of additional goods and services in the form of beverages, foods, memorabilia, jerseys, exclusive areas within the stadium, and preferred parking.

94.     Due to Defendants' monopoly power over the entire market for 2014 World Cup tickets, Plaintiffs and Class Members were coerced into the purchase of "hospitality" packages.

95.     Defendants, through their agreement and scheme to defraud, prohibited the purchase of the desired product, 2014 World Cup tickets, to compel the purchase of "world-class" high-cost foods, beverages, memorabilia, jerseys, and exclusive areas and parking at the stadium.

96.     Defendants' unlawful tying of 2014 World Cup tickets to the items in various forced "hospitality" packages acted to coerce purchasers into purchasing unwanted products, and/or into paying substantially higher prices than they would but for the Defendants' scheme.

97.     The act of tying the purchase of 2014 World Cup tickets to the purchase of "hospitality" packages allowed Defendants to disguise their unlawful sale of tickets at more than face value, deceiving American consumers and generating hundreds of millions of dollars in additional revenues and profits from Class Members.

98.     If American consumers were not forced to purchase tied products from Defendants in order to be able to purchase 2014 World Cup tickets, they would not have paid the substantially raised prices that they had to.

99.     Plaintiffs and the Class Members have been required to retain attorneys to bring this action, and, as a direct, natural, and foreseeable consequence thereof, have been damaged thereby. Plaintiffs and the Class Members are therefore entitled to recover their reasonable attorneys' fees and costs of suit.

## FIFTH CLAIM FOR RELIEF

### (Unjust Enrichment and Disgorgement of Profits)

100.     Plaintiffs and the Class Members repeat and reallege the allegations contained in each and every preceding paragraph as though fully set forth herein.

101.     By virtue of their conduct described above, Defendants have been unjustly enriched, at the expense of and to the detriment of Plaintiffs and the Class Members.

102.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the Class Members suffered damages in excess of $75,000.00.

103.     Plaintiffs and the Class Members have been required to retain attorneys to bring this action, and, as a direct, natural, and foreseeable consequence thereof, have been damaged thereby. Plaintiffs and the Class Members are therefore entitled to recover their reasonable attorneys' fees and costs of suit.

WHEREFORE, Plaintiffs and the Class Members demand the following relief:

1.     That the Court enter an order certifying the Class and appointing Plaintiffs as the representatives of the Class, and appointing counsel for Plaintiffs as lead counsel for the Class;

2.     That the Court enter judgment against Defendants and each of them for damages caused by their conduct, and if their conduct is proved willful, award Plaintiffs and the Class exemplary damages;

3.     That the Court award Plaintiffs and the Class pre-judgment and post judgment interest;

4.     That the Court establish a constructive trust based on Defendants' unjust enrichment, from which Plaintiffs and the Class Members may seek restitution and a disgorgement of profits;

5.     That the Court award Plaintiffs and the respective Class their costs and expenses as well as reasonable attorneys' fees in prosecuting this action; and,

6.     That the Court award such other and further relief as may be necessary or appropriate.

DATED this 8th day of September, 2015.

JOLLEY URGA WOODBURY
& LITTLE

MARTIN A. LITTLE, ESQ., #7067
MICHAEL R. ERNST, ESQ., #11957
3800 Howard Hughes Parkway, Suite 1600
Las Vegas, Nevada 89169
(702) 699-7500 Telephone
(702) 699-7555 Facsimile

WILL A. LEMKUL, ESQ., #6715
MORRIS SULLIVAN LEMKUL & PITEGOFF
3770 Howard Hughes Parkway, Suite 170
Las Vegas, Nevada 89169
(702) 405-8100 Telephone
(702) 405-8101 Facsimile
*Attorneys for Plaintiffs*

395535