MARTIN A. LITTLE, ESQ.
Nevada Bar No. 7067
mal@juww.com
MICHAEL R. ERNST, ESQ.
Nevada Bar No. 11957
mre@juww.com
JOLLEY URGA WOODBURY & LITTLE
3800 Howard Hughes Parkway, Suite 1600
Las Vegas, Nevada 89169
(702) 699-7500
FAX (702) 699-7555

WILL LEMKUL, ESQ.
Nevada Bar No. 6715
lemkul@morrissullivanlaw.com
MORRIS, SULLIVAN, LEMKUL & PITEGOFF, LLP
3770 Howard Hughes Parkway, Suite 170
Las Vegas, Nevada 89169
(702) 405-8100
FAX (702) 405-8101

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| VICKI PALIVOS, and GEORGE KLEANTHIS, individually and on behalf of all persons similarly situated,<br><br>          Plaintiffs,<br><br>vs.<br><br>FEDERATION INTERNATIONALE FOOTBALL ASSOCIATION aka "FIFA" MATCH HOSPITALITY AG; MATCH SERVICES AG; SPORTSMARK MANAGEMENT GROUP, LTD.; CARTAN TOURS, INC.,<br><br>          Defendants. | Case No.   2:15-cv-01721-JCM-CWM<br><br>**PLAINTIFFS' OPPOSITION TO FIFA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>**(Oral Argument Requested)** |

## TABLE OF CONTENTS

**INTRODUCTION AND BACKGROUND** …………….…...……………………………1

**LEGAL ARGUMENT**…………….…...………………………………………………..3

    **I.**     **FIFA's Activities Are Sufficient to Support Personal Jurisdiction**………3

         **A.**    **Personal Jurisdiction Over FIFA is Proper Under the Nevada Long-Arm Statute**……………………………………………………3

         **B.**    **FIFA Has Had the Necessary "Minimum Contacts" with the Forum to Support Personal Jurisdiction**………………...…………4

               **1.**    **FIFA Purposefully Directed its Activities Towards the U.S. and Nevada**………………...………………………………5

                    i.  FIFA Website………………...……………………5

                    ii.  Other Contacts with the Forum……………….....8

               **2.**    **There is a Clear Nexus Between FIFA's "Minimum Contacts" and Plaintiffs' Claims**………………...…………..9

               **3.**    **Specific Personal Jurisdiction Over FIFA is Reasonable Pursuant to Due Process**………………...………………11

               **4.**    **The Forum Selection Clause is Not Enforceable**…………12

    **II.**    **Pursuant to the Clayton Act, RICO Statute, and FRCP 4(k)(2), FIFA's National Contacts Subject It to Specific Jurisdiction**……………...………13

    **III.**   **Co-Defendants Acted As Alter Egos, Agents, and/or Co-Conspirators of FIFA Such That Personal Jurisdiction As to Said Co-Defendants Invokes Jurisdiction as to FIFA**………………...………….…..……………….17

**CONCLUSION**………………………………………………………………………..20

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Aanestad v. Beech Aircraft Corp.*
521 F.2d 1298 (9th Cir. 1974) …...…...….............................................................…..3

*Abelesz v. OTP Bank*
692 F3d 638, 660 (7th Cir. 2012) …...…...…...........................................................14

*Abraham v. Agusta, S.P.A.*
968 F.Supp. 1403, 1411 (D. Nev. 1997) …...…...…..................................................7

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*
480 U.S. 102, 112 (1987) …...…...…......................................................................18

*Burger King Corp. v. Rudzewicz*
471 US 462 (1985) …...…...…...........................................................................11, 18

*Calder v. Jones*
465 U.S. 783, 788–89, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) …..…….....................5, 6

*Casentini v. Ninth Jud. Dist. Ct.*
877 P.2d 535, 538 (Nev. 1994) …...…...…...............................................................4

*CollegeSource, Inc. v. AcademyOne, Inc.*
653 F.3d 1066, 1076 (9th Cir.2011) …...…...…........................................................5

*Cybersell, Inc. v. Cybersell, Inc.*
130 F.3d 414 (9th Cir.1997) …...…...…...........................................…...….............6

*Daimler AG v. Bauman*
134 S. Ct. 746 (2014) …...…...…......................................................................17, 18

*Dole Food Co., Inc. v. Watts*
303 F.3d 1104, 1111 (9th Cir.2002) …...…...…....................................................…..5

*E & M Properties, Inc. v. Razorgator, Inc.*
08-10377, 2008 WL 1837261, at *1 (E.D. Mich. Apr. 23, 2008) …...…...................…9

*E.g. CompuServe, Inc. v. Patterson*
89 F.3d 1257 (6th Cir.1996)…...…...…....................................................................7

*Eisen v. Carlisle & Jacquelin*
417 U.S. 156, 186 (1974). …...…...…....................................................................13

*Firouzabadi v. First Judicial Dist. Court In & For Carson City*
110 Nev. 1348, 1352 (1994) …...…...…................................................................…..9

*Fraser v. Smith*
594 F.3d 842, 850 (11th Cir. 2010) …...…...…......................................................14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
131 S. Ct. 2846, 2856 (U.S. 2011) …...…...…........................................................18

*Holland America Line Inc. v. Wärtsilä North America, Inc.*
485 F3d 450, 461 (9th Cir. 2007). …...…...…........................................................14

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*
326 U.S. 310 (1945) ….......….....................................................................................4, 18

*Kumarelas v. Kumarelas*
16 F. Supp.2d 1249, 1253 (D. Nev. 1998)…....…...........................................................4

*Los Gatos Mercantile, Inc.*
2015 WL 4755335 .......................................................................................................14

*Mehr v. FIFA*
No. 14–cv–3879–PJH, 2015 WL 4366044, at *10 (N.D. Cal. July 16, 2015). ..……...……17

*Menken v. Emm*
503 F3d 1050, 1057 (9th Cir. 2007) ..…..…...............................................................12

*M/S Bremen v. Zapata Off–Shore Co.*
407 U.S. 1 (1972) ..……...............................................................................................13

*Murphy v. Schneider Nat'l Inc.*
362 F.3d 1133, 1140 (9th Cir.2004). ..…................................................................13

*Myers v. Johns Manville Sales Corp.*
600 F. Supp. 977, 981 (D. Nev. 1984) ..…..….............................................................4

*Pebble Beach Co. v. Caddy*
453 F3d 1151, 1155 (9th Cir. 2006) ..…..…............................................................14

*Petersen v. Boeing Co.*
715 F.3d 276, 280 (9th Cir.2013) ..…..….................................................................13

*Ranza v. Nike, Inc.*
793 F.3d 1059 (9th Cir. 2015) *cert. denied* 15-756, 2016 WL 207297
(U.S. Jan. 19, 2016)…..............................................................................................17, 18

*Schwarzenegger v. Fred Martin Motor Co.*
374 F.3d 797, 802 (9th Cir. 2004) ..…..…....................................................................5

*Sher v. Johnson*
911 F.2d 1357, 1365 (9th Cir. 1990) ..…..…...........................................…..11, 12

*Shute v. Carnival Cruise Lines*
897 F.2d 377 (9th Cir. 1990). ..…..…...................................................................…..9

*Sinatra v. National Enquirer, Inc.*
854 F.2d 1191, 1195 (9th Cir. 1988) ..…..…......................................................…..7

*Stomp, Inc. v. NeatO, LLC.*
61 F. Supp. 2d 1074 (C.D. Cal. 1999) ..…..….......................................................6, 7

*Textor v. Board of Regents of Northern Ill. Univ,.*
711 F2d 1387, 1392 (7th Cir. 1983). ..…..…...........................................................19

*Trump v. Eighth Judicial Dist. Court of State of Nev. In & For County of Clark*
109 Nev. 687 (1993) …..…...........................................................................................3, 4

*Walden v. Fiore*
134 S. Ct. 1115 (2014) ..…..…...........................................................................18, 19

iii

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*
556 F.2d 406 (9th Cir. 1977) …...……...…………………………………………………3

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*
952 F. Supp. 1119, 1124 (W.D. Pa. 1997) ..………………………………………………7

## STATUTES

FRCP 4(k)(2) ..………………………………………………………………13, 14, 15

Nev. Rev. Stat. Ann. § 14.065…...……...…………………………………………………3

15 U.S.C. § 22……...……...……………………………………………………………..13

## MISCELLANEOUS

Flavio Rose, *Related Contacts & Pers. Jurisdiction: The "But for" Test*
82 Cal. L. Rev. 1545, 1568 (1994). ..…………………………………………………...9

Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 3:143..…….………………………12

Plaintiffs VICKI PALIVOS and GEORGE KLEANTHIS (hereinafter "Plaintiffs") respectfully submit this opposition to FIFA's Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction. This opposition is made and based upon the Federal Rules of Civil Procedure, Nevada Revised Statutes, the accompanying Memorandum of Points and Authorities, sworn affidavits, and any oral argument this Court may entertain.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION AND BACKGROUND

Anyone who has paid even a modicum of attention to the news in the past year has come across at least one, if not one dozen, different reports exposing the rampant and ongoing corruption at the very roots of FIFA, "world football's governing body." As Plaintiffs prepared this very motion, 60 Minutes, one of the nation's oldest and most watched news programs on television, aired an exposé on FIFA on February 15, 2016.[1] According to the report, "there has never been a scandal like the one enveloping FIFA- the most powerful sporting organization in the world. Its purpose is to regulate and promote the most popular sport in the world: International football, or soccer as we call it in the U.S. According to the U.S. Justice Department, however, it has been operating as an organized crime syndicate for the past 24 years." Some of those alleged crimes, like bribery and money laundering, were planned and carried out here in the United States. Dozens of top FIFA officials past and present are under indictment and the investigation is still in its early stages. Another recent story, published on February 16, 2016, details the arrest of Charles "Chuck" Blazer, a former FIFA Executive Committee member, and resident of the U.S., who has admitted to conspiring with FIFA Executive Committee members to accept bribes in conjunction with World Cup bids by potential host nations. *See* **Ex. 1**, News Article: The FBI vs. FIFA.

---

[1] *See* 60 Minutes 2/15/2016 Episode on Disc available at http://www.cbsnews.com/videos/fifa/ (streaming video).

After his arrest, Blazer turned into an invaluable informant for the FBI, helping reveal FIFA's deep-rooted corruption at all levels in the organization. *Id.* Blazer, former FIFA Vice President Jack Warner, and others are implicated in illegal acts, some of which took place on U.S. soil. *Id.* Countless news sources have covered the criminal enterprise that is FIFA. These reports include details of ongoing investigations dealing directly with World Cup ticket scams and frauds, mirroring the Plaintiffs' claims in this case. (*See* **Ex. 2**, Various News Articles: FIFA Corruption, Indictments, and Ticket Fraud). Jerome Valcke, FIFA's number two official behind only President Sepp Blatter, was suspended due to allegations that he conspired with others to resell 2014 World Cup tickets for a lucrative profit. *Id.*

In the midst of this onslaught of publicity, outing and detailing FIFA's long-standing and undeniable penchant for corruption, greed and criminal activity, FIFA and its Co-Conspirators unabashedly claim that they do not fall within the jurisdiction of the U.S. Meanwhile, FIFA's criminal activity has become so ubiquitous that the U.S. Department of Justice has a roughly 240 page superseding indictment against numerous FIFA officials. (*See* **Ex 3**, Superseding Indictment). The Las Vegas Mob Museum has even dedicated an entire exhibit to FIFA.[2] Just imagine, amidst exhibits including the blood-stained wall where the St. Valentine's Day Massacre occurred, depictions of Mob violence, casino skimming operations, a Tommy gun, an electric chair, and rare photographs of notorious mob figures and leaders such as Lucky Luciano and Bugsy Siegel, there is Sepp Blatter and his accused cohorts, representing FIFA in all its criminal glory.

FIFA and its Co-Conspirators' activities contradict their arguments that the U.S. lacks jurisdiction. As will be demonstrated below, Defendants have maintained and operated the fifa.com website, the only official channel for purchasing the roughly 3.1 million 2014 World Cup tickets available worldwide; heavily advertised and promoted the 2014 World Cup throughout the U.S., including official 2014 World Cup merchandise through the Official FIFA Online Store, which is

based in North Carolina; solicited sales of World Cup merchandise via emails from the Official FIFA Online Store directly to Nevada and U.S. residents; drafted sales regulations that maintained FIFA's status as the principal in the sale of tickets by MATCH; established a contractual relationship between the ticket purchaser and FIFA; sponsored the 2014 Sports Licensing and Tailgate Show in Las Vegas, Nevada; entered into sponsorship and partnership deals with numerous major U.S. Corporations; dedicated a specific percentage of tickets to games played by the U.S. Men's National Team solely for citizens and residents of the U.S.; sponsored the annual Interactive World Cup, which was held in the U.S. in 2011; entered into a licensing agreement with a U.S. based company to develop the official FIFA video game; and licensed countless toys sold in stores across the U.S. Therefore, FIFA's motion to dismiss must be denied.

## LEGAL ARGUMENT

**I.     FIFA's Activities Are Sufficient to Support Personal Jurisdiction**

### A.     Personal Jurisdiction Over FIFA is Proper Under the Nevada Long-Arm Statute

The starting point in analysis of personal jurisdiction issues in federal cases is the "long arm" statute in effect in the state in which the court is located. *Aanestad v. Beech Aircraft Corp.*, 521 F.2d 1298, 1300 (9th Cir. 1974).   To obtain jurisdiction over a non-resident defendant, a plaintiff must show: (1) that the requirements of the state's long-arm statute have been satisfied, and (2) that due process is not offended by the exercise of jurisdiction. *Trump v. Eighth Judicial Dist. Court of State of Nev. In & For County of Clark*, 109 Nev. 687, 698 (1993).  Nevada's long arm statute affords jurisdiction to the fullest extent consonant with the due process limits of the U.S. Constitution. *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 415 (9th Cir. 1977); s*ee also* Nev. Rev. Stat. Ann. § 14.065. "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have

---

[2] *See* http://edition.cnn.com/2015/07/31/football/fifa-mob-museum/index.html (attached as **Ex. 4**).

certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

When a defendant challenges the court's personal jurisdiction, a plaintiff "need only make a prima facie showing of jurisdictional facts to defeat the defendant's" challenge. *Kumarelas v. Kumarelas*, 16 F. Supp.2d 1249, 1253 (D. Nev. 1998); *Trump*, 857 P.2d at 743-44. In determining whether a prima facie showing has been made, the District Court accepts "properly supported proffers of evidence by a plaintiff as true…When factual disputes arise…those disputes must be resolved in favor of the plaintiff." *Trump*, 857 P.2d at 744; *accord, Casentini v. Ninth Jud. Dist. Ct.*, 877 P.2d 535, 538 (Nev. 1994); *see also Myers v. Johns Manville Sales Corp.*, 600 F. Supp. 977, 981 (D. Nev. 1984). In resolving personal jurisdiction questions, a District Court may determine the matter on basis of sworn affidavits and a pretrial motion hearing, defer a decision until parties have conducted discovery of jurisdictional facts and allow both sides a full evidentiary hearing wherein evidence of jurisdictional facts may be presented, or, if jurisdictional facts are intertwined with merits, defer a determination of the question until trial on the merits. *Id.* In the instant matter, Plaintiffs can make a *prima facie* showing of jurisdiction over FIFA. Therefore, FIFA's motion to dismiss must be denied.

### B.    FIFA Has Had the Necessary "Minimum Contacts" with the Forum to Support Personal Jurisdiction

In the Ninth Circuit, analysis of specific jurisdiction pursuant to a defendant's sufficient minimum contacts is performed using a three-part test:

1. The nonresident defendant must have purposefully directed his activities or consummated some transaction with the forum or a forum resident, or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
2. the claim must be one which arises out of or relates to the nonresident defendant's forum-related activities; and
3. the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.,* it must be reasonable.

*See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The plaintiff has the burden of proving the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1076 (9th Cir.2011). If he does so, the burden shifts to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

### 1.     FIFA Purposefully Directed its Activities Towards the U.S. and Nevada

To establish purposeful direction, the plaintiff must show that the defendant committed an intentional act, expressly aimed at the forum state, causing harm that the defendant knows is likely to be suffered in the forum state. *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1111 (9th Cir.2002) (citing *Calder v. Jones,* 465 U.S. 783, 788–89, 104 S. Ct. 1482, 79 L.Ed.2d 804 (1984)).

Here, FIFA purposefully directed its actions at the U.S. and Nevada. FIFA appointed MATCH Hospitality as the world-wide distribution rights holder for tickets to the 2014 World Cup in Brazil. (Complaint ¶ 16). MATCH Hospitality appointed SportsMark as the exclusive agent for tickets in the U.S. (*Id. ¶* 19). Defendants have admitted, in their various motions and affidavits, that they sold tickets to Nevada citizens. (Joint Motion to Dismiss re Failure to State a Claim at pg 7, fn.'s 8 and 9; *see also* MATCH Service's Motion re Jurisdiction at 5:15-6:6; *see also* MATCH Hospitality's Motion re Jurisdiction at 2:23-24, 9:22-24; *see also* Portez Decl. ¶ 22). FIFA intended to sell tickets to the U.S. market, and given that the U.S. was the second highest ranking purchaser of 2014 World Cup tickets behind only Brazil itself, FIFA succeeded. FIFA advertised and promoted the 2014 World Cup globally and in the U.S. in order to build interest and demand, just as any business selling a product will do. (Decl. Palivos ¶ 2; Decl. Kleanthis ¶ 2). By directing its actions at the U.S., FIFA necessarily directed its actions at Nevada as well.

### i.     FIFA Website

Fans could purchase 2014 World Cup tickets from FIFA.com through a lottery-style draw system, or purchase tickets as part of hospitality packages. (**Ex. 5**, FIFA Media Info Kit).  Every ticket purchaser was required to register, thereby providing FIFA and/or various Co-Defendants

with a home address. *Id*. Plaintiffs in this action provided Defendants with their home address both through notice via emails, as well as formal registration documents. (**Ex. 6**, Emails and Registration re NV Address). FIFA was on notice that Plaintiffs and others were citizens of Nevada, and continued to provide several proposals and offers regarding tickets via direct communications. (Decl. Palivos ¶ 3; Decl. Kleanthis ¶ 3). FIFA fully intended and purposefully directed its efforts to sell tickets to the U.S. and Nevada, and was aware the harms caused by its illegal actions would be suffered in the U.S. and Nevada. *See Calder*, *supra*, 465 U.S. at 788–89.

FIFA cites to *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir.1997) for the proposition that its website is passive and not aimed intentionally at the U.S. (*See* FIFA's Motion to Dismiss for Lack of Personal Jurisdiction at pg 9, lines 1-3). In *Cybersell*, the Ninth Circuit found that posting a website which forum residents could access, without any other activity in the forum, was insufficient to subject the site's owner to personal jurisdiction. The Ninth Circuit ruled that "the essentially passive nature of [the defendant's] activity in posting a home page on the World Wide Web that allegedly used the service mark of [the plaintiff] does not qualify as purposeful activity invoking the benefits and protections of [the forum state]." *Id*. at 420. But the Ninth Circuit noted that "'[i]nteractive' web sites present somewhat different issues," and that the defendant had "conducted no commercial activity over the Internet in [the forum state]." *Id*. at 418–419. Thus, *Cybersell* is entirely distinguishable from the present case. Here, FIFA has undertaken commercial activity on its website, and has offered for sale and sold tickets and merchandise to Nevada citizens via the Internet. (Decl. Palivos ¶ 4; Decl. Kleanthis ¶ 4).

In *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074 (C.D. Cal. 1999), the Ninth Circuit analyzed whether NeatO's website constituted minimum contacts with the forum state sufficient to exercise personal jurisdiction over it. The *Stomp* court discusses and distinguishes *Cybersell* as it did not involve commercial activity. *Id*. at 1077. The court synthesized the outline of a rule whereby, "personal jurisdiction is not appropriate when a website is merely passive, either as an

advertisement or for informational purposes, **but is appropriate when an entity is conducting business over the Internet**." *Id.* at 1078 (emphasis added). The *Stomp* court cites to and closely follows the sliding scale first presented in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997): "If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *E.g. CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions."

Here, FIFA's website was interactive and functioned to permit and effectuate substantial commercial activity between Defendant and citizens of the U.S. and Nevada. (**Ex. 5**). Solicitation of business in the forum state by a nonresident defendant will generally be considered purposeful availment, and will support exercise of personal jurisdiction over defendant under the due process clause, if it results in contract negotiations or transaction of business. *See Abraham v. Agusta, S.P.A.,* 968 F.Supp. 1403, 1411 (D. Nev. 1997) *citing Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988) (the solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment).

FIFA's claim that its website is passive is patently false and bordering on the absurd. (**Ex. 5**). FIFA's website, FIFA.com, was the only way millions of U.S. fans could attempt to purchase tickets to the 2014 World Cup. (**Ex. 7**, FAQ for International Residents). Online ticket sales first launched in August of 2013. *Id.* However, over-the-counter purchases at designated FIFA Venue Ticketing Centres did not launch until almost a year later, in June 2014. *Id.* FIFA knew, planned, anticipated and designed the ticket purchasing process so that fans from the U.S. and worldwide would be required to access its website for the specific purpose of procuring World Cup 2014 tickets. (Decl. Palivos ¶ 5; Decl. Kleanthis ¶ 5). FIFA's website, FIFA.com/hospitality (aka hospitality.fifa.com), also hosted the "Official Hospitality Programme" whereby fans could register

an account, download sales brochures, download the necessary forms for requesting tickets, contact sales agents, review details about the hospitality program, and purchase hospitality packages. (Decl. Palivos ¶ 6; Decl. Kleanthis ¶ 6). This was indisputably an interactive site that heavily advertised and promoted the 2014 World Cup.

Further, as Plaintiffs have alleged, FIFA utilized this website to falsely claim that match tickets were sold out when, in fact, thousands of tickets were available. (Decl. Palivos ¶ 7; Decl. Kleanthis ¶ 7). By designing and manipulating the process as it did, FIFA was then able to direct fans on its website to the hospitality packages which, conveniently, were not sold out. (Decl. Palivos ¶ 8; Decl. Kleanthis ¶ 8). FIFA's acts were in direct furtherance of the conspiracy alleged in the Plaintiffs' Complaint.

ii.     Other Contacts with the Forum

FIFA maintained and operated a website for the sale of merchandise, store.fifa.com.  (Decl. Palivos ¶ 9). The Official FIFA Online Store is operated by a U.S. company, Sports Endeavors Inc. ("SEI"), and is based and located in North Carolina. (**Ex. 8**, FIFA Online Store T&C's). The FIFA Online Store serves the U.S. and global soccer market with shipping options on international orders. (Decl. Palivos ¶ 10). The terms and conditions further state, "We provide this Website for use only by persons located in the United States." (**Ex. 8**).  Plaintiff Palivos, a Nevada resident, received multiple emails from the Official FIFA Store soliciting sales of 2014 World Cup Merchandise. (Decl. Palivos ¶ 11; *see also* **Ex. 9**, Emails from FIFA Online Store). As a result of these solicitations, Plaintiff Palivos purchased World Cup related merchandise from FIFA. (*Id.*; *see also* **Ex. 9**). Therefore, FIFA cannot claim it did not purposefully direct its activities at the forum.

Prior to the 2014 World Cup in Brazil, FIFA attended the Sports Licensing and Tailgate Show (the "Show") in Las Vegas, NV as a licensor.[3] (**Ex. 10**, Articles re Sports Licensing and

---

[3] *See* http://www.sportsbusinessdaily.com/Journal/Issues/2014/01/13/Marketing-and-Sponsorship/Licensing-show.aspx?hl=FIFA&sc=0#.VqaUI_cafUc.email; *see also* http://matthewkenton.com/industry-news/record-attendance-at-sports-licensing-tailgate-show

Tailgate Show).   The Show is the "premier event for brand owners, licensors, licensees and retailers interest in sports licensed products." (**Ex. 11**, Sports Licensing and Tailgate Show Website).[4] The Show attracts buyers from all types of retailers and represents FIFA's purposeful direction of activity aimed at the U.S. as well as Nevada specifically. (**Ex. 10**).[5] Because 2014 was a World Cup year, FIFA's appearance at the 2014 Show effectively increased awareness of its brand. With the World Cup being "one of the biggest global sporting events," FIFA marketed and sold its merchandise to countless U.S. retailers looking to deal in licensed sports merchandise. *See Firouzabadi v. First Judicial Dist. Court In & For Carson City*, 110 Nev. 1348, 1352 (1994) (seller purposefully availed itself of opportunity to do business in Nevada by attending trade fair).

### 2.    There is a Clear Nexus Between FIFA's "Minimum Contacts" and Plaintiffs' Claims

The Ninth Circuit adopted "but-for" causation as its test of relatedness in *Shute v. Carnival Cruise Lines,* 897 F.2d 377 (9th Cir. 1990). *See* Flavio Rose, *Related Contacts & Pers. Jurisdiction: The "But for" Test*, 82 Cal. L. Rev. 1545, 1568 (1994). The test provides that in determining whether a forum can exercise personal jurisdiction over a defendant, the contact in question must be a "but for" cause of the plaintiff's injury. *See* Flavio Rose, *Related Contacts & Pers. Jurisdiction: The "But for" Test*, 82 Cal. L. Rev. 1545, 1568 (1994). In applying the test, the *Shute* court found personal jurisdiction over a cruise ship company in a suit brought by a passenger who slipped and fell during a cruise. The defendant had advertised in the forum and the plaintiffs had reserved their place on the cruise with a nonrefundable payment mailed from the forum. *Shute,* 897 F.2d at 377. The Ninth Circuit concluded that "but for" the cruise line's advertisements in the forum, the plaintiff would not have been on the cruise and would not have suffered the injury. *Id.*

FIFA cites to *E & M Properties, Inc. v. Razorgator, Inc.*, 08-10377, 2008 WL 1837261, at

---

[4] *See* http://www.sportstailgateshow.com/show-info/about-the-show

[5] *See* http://www.retail-merchandiser.com/index.php/23-online/1623-key-leagues-new-retail-seminar-scheduled-for-sports-li

*1 (E.D. Mich. Apr. 23, 2008), for the proposition that FIFA's contacts with the forum do not relate to the Plaintiffs' causes of action.   However, *Razorgator* is entirely distinguishable. In *Razorgator,* the court did not find minimum contacts because the plaintiff did not use the defendant's website to make its ticket purchase. *Id.* at *5. Rather, the plaintiff contacted a third-party which in turn purchased the tickets directly from defendant. *Id*. In contrast, Plaintiffs in our case utilized FIFA's own website, which also directed fans to the Official Hospitality Programme hosted on the same web address. (Decl. Kleanthis ¶ 9). The Defendants have admitted that Nevadans purchased hospitality packages. Plaintiff Palivos purchased merchandise directly from the FIFA Online Store. (Decl. Palivos ¶ 11). Plaintiff Kleanthis purchased eight tickets directly from FIFA's website. (Decl. Kleanthis ¶ 10). FIFA used this very website to effectuate the conspiracy at issue in Plaintiffs' Complaint. *Id.*

Here, each and every one of FIFA's acts, alleged by Plaintiffs to constitute sufficient minimum contacts, is directly related to the Plaintiffs' causes of action. FIFA argues that because "Plaintiffs' claims are all about hospitality packages that were marketed in the United States by a different company," FIFA's contacts with the forum were not a "but-for" cause of Plaintiffs' claims. (Motion at page 9, lines 5-6). However, FIFA fails to appreciate the gravamen of the Plaintiffs' complaint. Plaintiffs allege that the Defendants *collaborated* in a scheme and *conspired* to inflate ticket prices and profited from this scheme and conspiracy. (Complaint ¶¶ 8-9).

As discussed above, the only way to purchase tickets to the 2014 World Cup was to visit FIFA's website. (Decl. Palivos ¶ 5; Decl. Kleanthis ¶ 5). FIFA designed the ticket purchasing process in a very specific manner in order to eliminate sales by unauthorized sellers.  In turn, FIFA drove 100% of consumers looking for tickets to its official website. FIFA knew, and was even certain, that the U.S. would be a significant purchaser of 2014 World Cup tickets; and that U.S. citizens, including those residing in Nevada, would utilize FIFA's website to purchase tickets. FIFA required all users to register and provide country of residence and address. (**Ex. 5**). Armed

with this information, FIFA continued to hold personal communications with U.S. consumers regarding inquiries to purchase tickets, hospitality packages, and merchandise that was available. (Decl. Palivos ¶ 3; *see also* **Ex. 6**; *see also* **Ex. 12**, Correspondence re Tickets).

FIFA's maintenance and operation of the Official FIFA Online Store is also related to Plaintiffs' causes of action. By advertising, promoting, soliciting and selling official 2014 World Cup merchandise, FIFA spurred awareness of its brand and the World Cup, raising demand for tickets. (Decl. Palivos ¶ 12; Decl. Kleanthis ¶ 12). This is especially true in a market such as the U.S., where soccer has mainstream popularity and public interest skyrockets during each World Cup year. (Decl. Palivos ¶ 13; Decl. Kleanthis ¶ 13). The Official FIFA Online Store is based in the U.S. (**Ex. 8**). Similarly, FIFA's participation in the 2014 Sports Licensing and Tailgate Show in Las Vegas helped bolster awareness of FIFA's brand. Hundreds of retailers were present at the Show. **Ex.'s 6** and **7**; see also Decl. Palivos ¶ 14). FIFA's marketing efforts in Nevada and the U.S. succeeded as they were able to sell millions of dollars of tickets and merchandise to U.S. consumers. But-for FIFA's activities establishing minimum contacts with the U.S. and Nevada, Plaintiffs and those in the same class would not have purchased 2014 World Cup tickets and/or paid artificially high prices for them. (Decl. Palivos ¶ 15; Decl. Kleanthis ¶ 14). FIFA's activities led to the most financially successful World Cup to date. (**Ex. 13**, FIFA Financial Report 2014). FIFA's activities were in direct support of the conspiracy to fix prices and overcharge countless Americans, whose claims would not have arisen but-for FIFA's contacts with the forum.

### 3. Specific Personal Jurisdiction Over FIFA is Reasonable Pursuant to Due Process

It must appear that the exercise of jurisdiction by local courts in the particular case would "comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 US 462 (1985). The burden is on defendant to present a "*compelling* case that the exercise of jurisdiction would not be reasonable." *Menken v. Emm,* 503 F3d 1050, 1057 (9th Cir. 2007). The mere fact local litigation is inconvenient (or some other forum more convenient) is not enough. *Sher v.*

1

*Johnson,* 911 F2d 1357, 1365 (9th Cir. 1990) (emphasis added). Litigation locally must be **so**

2

**gravely difficult** that it puts the defendant at a **severe disadvantage** in comparison to his or her

3

opponent. *Id.* Requiring the nonresident to defend locally is not constitutionally unreasonable "in

4

this era of fax machines and discount air travel." *Id.*; *see also* Rutter Group Prac. Guide Fed. Civ.

5

Pro. Before Trial Ch. 3:143.

6

7

FIFA claims it would be subject to a significant burden if forced to defend its actions in the

8

U.S. because none of its documents or records concerning the events, or its witnesses with personal

9

knowledge of the same, are located in the U.S. Unashamed, FIFA, a multi-billion dollar

10

organization, implies it will be less of a burden for hundreds of thousands of Americans to each

11

travel to Switzerland and/or Brazil to litigate their claims individually. Meanwhile, the Ninth

12

Circuit already considered the fact that modern technology **in 1990** defeated such an argument,

13

holding jurisdiction was reasonable as to a nonresident defendant. *See Sher v. Johnson,* 911 F2d

14

1357, 1365 (9th Cir. 1990). Today, in 2016, it is nigh impossible to accept the argument that FIFA

15

will be burdened by having to lug around a flash drive the size of a stick of gum that can hold

16

hundreds of gigabytes of information and weighs less than the keychain it is attached to. FIFA can

17

print hard copies of documents it requires right here in the U.S. Even the need to fly out witnesses

18

does not make local litigation "so gravely difficult" that it puts FIFA at a "severe disadvantage."

19

FIFA has simply not met its burden of showing jurisdiction would be unreasonable.

20

21

## 4.    The Forum Selection Clause is Not Enforceable

22

FIFA mentions the requirement, put forth in the Hospitality Sales Regulations and

23

FIFA.com website terms and conditions, that any disputes be resolved in Zurich, Switzerland.

24

FIFA also states that any claims under the 2014 World Cup in Brazil General Terms and

25

Conditions for the Use of Tickets are to be resolved in Brazil. Defendants' self-serving documents

26

are unforgivably contradictory—one requires resolution in Switzerland, and the other in Brazil,

27

although both involve 2014 World Cup tickets. This is nothing but an attempt to thwart justice for

28

U.S. consumers. The Ninth Circuit has held that "A court may decline to enforce a forum selection clause if, *inter alia,* 'enforcement would contravene a strong public policy of the forum in which suit is brought.'" *Petersen v. Boeing Co.,* 715 F.3d 276, 280 (9th Cir.2013) (quoting *Murphy v. Schneider Nat'l Inc.,* 362 F.3d 1133, 1140 (9th Cir.2004)). Under *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1 (1972), there are three reasons a forum selection clause may be unenforceable: "(1) 'if the inclusion of the clause in the agreement was the product of fraud or overreaching'; (2) 'if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced'; and (3) 'if enforcement would contravene a strong public policy of the forum in which suit is brought.'" *Petersen,* 715 F.3d at 280.

In this case, if the forum selection clauses were to be enforced, Plaintiffs and all those in the class would be deprived of their day in court and a strong public policy of Nevada and the U.S. would be disregarded. (Decl. Palivos ¶ 16; Decl. Kleanthis ¶ 15). Even if each Plaintiff had the means to travel to Switzerland and/or Brazil for the time commitment required by a lawsuit, the value of the claims of each Plaintiff in this matter do not eclipse the costs of travel and employing legal help in unknown and unfamiliar countries. *Id.* Plaintiffs would be forced to give up on their claims. *Id.* As the Supreme Court stated, "[t]he class action is one of the few legal remedies the small claimant has against those who command the status quo." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 186 (1974). Defendants should not be permitted to rely on self-serving and contradictory forum selection clauses to shield themselves from jurisdiction where they have conspired to defraud and harm hundreds of thousands of U.S. consumers.

## II. Pursuant to the Clayton Act, RICO Statute, and FRCP 4(k)(2), FIFA's National Contacts Subject It to Specific Jurisdiction

Section 1965(b) of RICO and Section 12 of the Clayton Act (15 U.S.C. § 22) contain, respectively, nationwide and global service of process provisions. FIFA's only argument against a finding of personal jurisdiction via the "national contacts" test that the statutes provide is that Plaintiffs cannot and have not made any plausible allegations that FIFA participated in the alleged

conspiracy.  FIFA cites *Los Gatos Mercantile, Inc.,* 2015 WL 4755335, at *1 and similar cases to support its contention that Plaintiffs made no plausible allegations against it. However, these cases involve plaintiffs who simply failed to make complete allegations. Here, Plaintiffs have put forth numerous allegations that the Defendants were members of the enterprise and engaged in a pattern of racketeering activity.[6] FIFA forgets that Plaintiffs need only make out a *prima facie* case, and that all facts in contention are made out in Plaintiffs' favor. *See Trump*, 857 P.2d at 743-44.

Even in the absence of a federal statute authorizing nationwide or global service, foreign defendants who are not otherwise subject to jurisdiction in any state but who have contacts with the nation as a whole are subject to personal jurisdiction on claims arising under federal law. *See* FRCP 4(k)(2); *see also Pebble Beach Co. v. Caddy,* 453 F3d 1151, 1155 (9th Cir. 2006); *Holland America Line Inc. v. Wärtsilä North America, Inc.,* 485 F3d 450, 461 (9th Cir. 2007). To establish personal jurisdiction based on a defendant's aggregated national contacts, plaintiff must prove three factors: (1) the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction; (2) the claim arises under federal law, and; (3) the federal court's exercise of personal jurisdiction comports with due process. *See Pebble Beach*, *supra*, 453 F3d at 1158-1159; *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007).  Here, FIFA itself claims it is not subject to personal jurisdiction anywhere in the U.S.  Further, Plaintiffs' claims indisputably arise under federal laws, including RICO, the Sherman Act, and the Clayton Act. The remaining question is whether the exercise of personal jurisdiction comports with due process.

The requirements for personal jurisdiction under a national contacts test are identical to the minimum contacts analysis discussed above, except the defendants' contacts need not be with the forum state alone, but can consist of all contacts made with the U.S. as a whole. *See Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010); *see also Abelesz v. OTP Bank,* 692 F3d 638, 660 (7th

---

[6] *See* **Ex. 3** (Federal Superseding Indictment wherein 12 of 16 top FIFA officials have pled guilty to charges almost identical to Plaintiffs' claims in this matter).

Cir. 2012) (holding that while Rule 4(k)(2) applies a broader geographic standard for which contacts are relevant, the minimum in the "minimum contacts" that are constitutionally sufficient to support general or specific jurisdiction is the same).   In addition to the contacts discussed above, FIFA has made the following contacts with the U.S. as a whole, all of which relate directly to the Plaintiffs' causes of action:

- FIFA entered into sponsorship and partnership deals with major Corporations[7], who have headquarters in the U.S. and conduct substantial business in the U.S., for the promotion and advertising of the 2014 World Cup world-wide, and in the U.S. FIFA's website states, including:

  - Coca-Cola[8]:   The world's largest beverage company, headquartered in Atlanta, Georgia, created digital films, mini-documentaries, TV ads, specially marked limited edition bottles, created a World Cup anthem, ran contests and promotions through mycokerewards.com relating to the World Cup and providing World Cup related prizes, and also operated the World Cup Trophy Tour which made stops in Washington DC, Miami, Atlanta, and Los Angeles.

  - Adidas[9]:   A global sports brand with heavy roots in soccer created numerous TV ads, conducted the FIFA World Cup Chant Challenge, as well as designed the official 2014 World Cup ball. According to Ernesto Bruce, head of soccer at Adidas, Adidas specifically targeted the U.S. by sending NBA players it sponsors to the World Cup and using Kanye West for a World Cup anthem song.[10]

  - VISA[11]:   An American multinational financial services corporation headquartered in Foster City, Calfornia, VISA developed TV ads, social media campaigns and contests. According to the company, it has had a 40% increase in the number of its U.S. banking partners that are accessing its World Cup assets for marketing purposes.

---

[7] See http://www.fifa.com/about-fifa/marketing/sponsorship/partners/index.html ("The FIFA World Cup™ is the most effective international marketing platform, reaching millions of people in over 200 countries throughout the world. In order to be able to stage an event of such a scale, the support of Commercial Affiliates, who provide vital services and product support for the entire event's operations, is crucial.") (attached as **Ex. 14**).

[8] See http://www.sponsorship.com/Sponsorship-Consulting/2014-FIFA-World-Cup-Brazil-Sponsorship-Insights/Coca-Cola.aspx (attached as **Ex. 15**).

[9] See http://www.sponsorship.com/Sponsorship-Consulting/2014-FIFA-World-Cup-Brazil-Sponsorship-Insights/Adidas.aspx (**Ex. 16**).

[10] See http://money.cnn.com/2014/06/05/investing/world-cup-adidas/index.html (**Ex. 17**).

[11] See http://www.sponsorship.com/Sponsorship-Consulting/2014-FIFA-World-Cup-Brazil-Sponsorship-Insights/Visa.aspx (**Ex. 18**).

- o  Sony[12]:                With a U.S. headquarters located in New York, Sony partnered with FIFA to create numerous TV ads, broadcast games in 4K Hi-Definition, held numerous promotions and contests, and created the One Stadium concept to connect fans to the atmosphere of being at the stadium during games.

- o  Budweiser[13]:  Headquartered in the U.S. in St. Louis, MO, Budweiser is the highest selling beer in the U.S.. Budweiser sponsored Man of the Match voting for each game in the 2014 World Cup with record voting, created TV ads, and localized promotions and contests for fans in the U.S. and across the globe in various other countries.

- o  McDonalds[14]: Headquartered in the U.S. in Illinois, McDonalds is the world's largest hamburger fast food chain. McDonalds created special packaging for its food items advertising the World Cup, conducted the Player Escort Program whereby children get to walk into the pitch hand-in-hand with players before each game, operated a fantasy league which had over 608,000 registered users, created a U.S. specific ad campaign known as "House Divided," and the U.S.-specific contest called "Peel, Play, Ole, Ole."

- o  Johnson & Johnson[15]: Headquartered in the U.S. in New Jersey, Johnson & Johnson created TV ads, the Champions of Care program wherein U.S. fans were asked to nominate and vote Champions of Care nominees who would ultimately win a round trip to the World Cup in Brazil, and in the U.S. conducted a mail-in program where fans could get a limited edition World Cup branded Band-Aid tin.

- A media release posted on January 30, 2014 on FIFA's website declares that fans from the 32 participating teams have until February 7, 2014 to request tickets via the special section on fifa.com. "It is important to note that **only nationals or residents** of the respective team's country can apply for these tickets. For each game, 16 per cent of the tickets are reserved for the fans of both teams. (8 per cent per team per game)." So essentially, FIFA admits that a set number of tickets were reserved **only** for residents and citizens of the U.S. since the U.S. Men's National Team was one of the 32 teams in the World Cup. (**Ex. 23**, January 30, 2014 Media Release).

- FIFA sponsors the annual Interactive World Cup, which was held in the U.S. in 2011.[16]

- The U.S. hosted the World Cup in 1994 and the Women's World Cup in 2003.

---

[12] *See* http://www.sponsorship.com/Sponsorship-Consulting/2014-FIFA-World-Cup-Brazil-Sponsorship-Insights/Sony.aspx (**Ex. 19**).

[13] *See* http://www.sponsorship.com/Sponsorship-Consulting/2014-FIFA-World-Cup-Brazil-Sponsorship-Insights/Budweiser.aspx (**Ex. 20**).

[14] *See* http://www.sponsorship.com/Sponsorship-Consulting/2014-FIFA-World-Cup-Brazil-Sponsorship-Insights/McDonald-s.aspx (attached as **Ex. 21**).

[15] *See* http://www.sponsorship.com/Sponsorship-Consulting/2014-FIFA-World-Cup-Brazil-Sponsorship-Insights/Johnson---Johnson.aspx (attached as **Ex. 22**).

[16] *See* http://www.fifa.com/interactiveworldcup/destination/index.html (attached as **Ex. 24**).

- FIFA and Electronic Arts, Inc. ("EA") entered into a licensing agreement whereby EA would develop and sell an annually released soccer video game based on entirely on FIFA's intellectual property, including a specific 2014 World Cup in Brazil version of the game, sold across the U.S.
- FIFA branded toys are sold in stores across the U.S.

As FIFA points out, some of these contacts or similar contacts, were discussed in *Mehr v. FIFA*, No. 14–cv–3879–PJH, 2015 WL 4366044, at *10 (N.D. Cal. July 16, 2015). In *Mehr,* the Ninth Circuit court stated, "[t]he allegations that FIFA has entered into various commercial arrangements or agreements, while somewhat vague, do arguably support a finding of some low level of purposeful availment. However, the court finds it unnecessary to engage in a comprehensive analysis of the 'purposeful availment' prong, because plaintiffs cannot satisfy the second prong of the specific jurisdiction test—that the claims asserted in the complaint arise out of or relate to FIFA's forum-related activities." *Id.* If the contacts shown by the plaintiffs were related to their claims, the *Mehr* court would likely have found minimum contacts satisfied.

In the instant matter, the plentiful and substantial contacts of FIFA with the U.S. all relate directly to Plaintiffs' causes of action. Plaintiffs' claims center on the conspiracy undertaken by the Defendants to market and promote the 2014 World Cup in Brazil, artificially control ticket supply, inflate ticket demand, and profit from the illegal sales of tickets above face value. Each of the above listed contacts further the conspiracy. These nationwide contacts are sufficient to establish specific personal jurisdiction. Therefore, FIFA's motion to dismiss for lack of jurisdiction must be denied.

## III. Co-Defendants Acted As Alter Egos, Agents, and/or Co-Conspirators of FIFA Such That Personal Jurisdiction As to Said Co-Defendants Invokes Jurisdiction as to FIFA

In *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), the court rejected the use of agency theory in finding *general* jurisdiction. In *Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) *cert. denied*, 15-756, 2016 WL 207297 (U.S. Jan. 19, 2016), the Ninth Circuit follows *Daimler*, reasoning that a focus on whether a subsidiary performs important work "stacks the deck, for it will always yield a pro-jurisdiction answer." *Id.* at 1071 (citing *Daimler*, 134 S. Ct at 759). FIFA relies

on these cases to argue that an agency theory would be improper for finding jurisdiction. However, FIFA misrepresents the true reasoning behind the Ninth Circuit's holdings. The *Daimler* court states that agency relationships "may be relevant to the existence of *specific* jurisdiction." *Daimler*, 134 S. Ct. at 759, fn. 13.  In a significant footnote, the court reasons that because the corporate personality is a fiction, it can only act through its agents, and as such, "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Id.*; *see also Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 112 (1987) (defendant's act of marketing a product through a distributor who has agreed to serve as the sales agent in the forum state may amount to purposeful availment); *see also Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 318 (1945) (the commission of some single or occasional acts of the corporate agent in a state may sometimes be deemed sufficient to render the corporation liable to suit on related claims).

FIFA fails to acknowledge the basis of the Ninth Circuit's holdings in *Daimler* and *Ranza*. Because general jurisdiction does not require contacts of the defendant to relate to the plaintiff's claims, the use of agency theory in finding jurisdiction "would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*." *Daimler*, 134 S. Ct. at 760 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2856 (U.S. 2011).  "Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 762 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). On the other hand, finding *specific* jurisdiction under an agency theory avoids the concerns voiced by the Ninth Circuit because the contacts alleged must be related to the plaintiff's claims.

Finally, FIFA argues that the Supreme Court has undermined the very foundations of the conspiracy theory of jurisdiction. However, FIFA's reliance on *Walden v. Fiore*, 134 S. Ct. 1115

(2014) is misplaced. *Walden* does not refer to the conspiracy theory of jurisdiction whatsoever. The word "conspiracy" does not appear in the opinion. The *Walden* court's statement that specific jurisdiction must be based on contacts that the "defendant *himself*" creates relates to attempts to connect the defendant to a forum based on a plaintiff's contacts, or unrelated third parties over which the defendant has no control. *Id.* at 1122. Here, Plaintiffs allege that Defendants acted in collaboration, such that jurisdiction found as to one actor should be transmuted to his co-conspirators. The concept is distinguished from the reasoning behind *Walden*. FIFA proclaims that it did not sell hospitality packages to U.S. customers and that any alleged relationship to the sales of hospitality packages, or to the other Defendants is conclusory at best. However, FIFA's own literature puts a lie to this contention. Specifically, paragraph 4.3 of the 2014 FIFA WORLD CUP BRAZIL HOSPITALITY SALES REGULATIONS enclosed with **every** proposal for Hospitality Packages states:

> […] … MATCH Hospitality has been **authorized by FIFA** to provide a ticket to the Customer as an integral part of each Hospitality Package and that **FIFA, upon MATCH Hospitality's notification to FIFA of the sale of Hospitality Packages to Customers, automatically becomes the principal in the sale of the Ticket being part of the Hospitality Package**. The **Customer hereby accepts this direct contractual relationship with FIFA** . . . based on this **direct relationship between FIFA and Customer with respect to Tickets**, FIFA has the right to exercise any of the rights with respect to Tickets pursuant to the Ticket GTCs as well as any other documents of the Sales Agreement.

(**Ex. 25**, Hospitality Sales Regulations). This paragraph entirely negates FIFA's arguments. FIFA is explicitly, by contract, the principal in the sale. It gives FIFA identical rights as MATCH or MATCH's sub-agents (whoever sells the package).

    In any event, FIFA fails to cite case-law holding that the Ninth Circuit has outright rejected the conspiracy theory of jurisdiction. This Court should utilize the conspiracy theory of jurisdiction as it is "based on the time honored notion that the acts of a conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy." *See Textor v. Board of Regents of Northern Ill. Univ,.* 711 F2d 1387, 1392 (7th Cir. 1983).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court must deny FIFA's motion. If, on the existing record, the Court is inclined to grant FIFA's motion, Plaintiffs respectfully request the Court to stay the proceedings so that Plaintiffs may conduct jurisdictional discovery.

DATED this 19th day of February, 2016.

MORRIS, SULLIVAN, LEMKUL & PITEGOFF

By:/s/ Will Lemkul
Will Lemkul, Esq., NV Bar No. 6715
3770 Howard Hughes Parkway, Suite 170
Las Vegas, Nevada 89169
(702) 405-8100
FAX (702) 405-8101
lemkul@morrissullivanlaw.com

Martin A. Little, Esq., NV Bar No. 7067
Michael R. Ernst, Esq., NV Bar No. 11957
JOLLEY URGA WOODBURY & LITTLE
3800 Howard Hughes Parkway, Suite 1600
Las Vegas, Nevada 89169
(702) 699-7500
FAX (702) 699-7555
mal@juww.com
mre@juww.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of Morris, Sullivan, Lemkul & Pitegoff, LLP, and that on this 19th day of February, 2016, I caused a true and correct copy of the foregoing **PLAINTIFFS' OPPOSITION TO FIFA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** to be served via the US. District Court's Notice of Electronic Filing ("NEF") in the above-captioned case, upon the following:

Martin A. Little
Michael R. Ernst
JOLLEY URGA WOODBURY & LITTLE
3800 Howard Hughes Parkway
Suite 1600
Las Vegas, NV 89169
Tel: 702.699.7500
Fax: 702.699.7555
*Attorneys for Plaintiffs*

Robert S. Larsen
GORDON & REES LLP
3770 Howard Hughes Pkwy, Suite 100
Las Vegas, NV 89169
Tel: 702.577.9300
Fax: 702.255.2858
*Attorneys for Defendants MATCH Hospitality AG and MATCH Services AG*

Whitney Welch
GREENBERG TRAURIG
3773 Howard Hughes Parkway, #400N
Las Vegas, NV 89169
Tel: 702.792.3773
Fax: 702.792.9002
*Attorneys for Defendant Cartan Tours, Inc.*

Rosa Solis-Rainey
MORRIS LAW GROUP
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101
Tel: 702.474.9400
Fax: 702.474.94722
*Attorneys for Defendant Infront Sports & Media*

Howard J. Steinberg
GREENBERG TRAURIG
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Tel: 310.586-7700
Fax: 310.586-7800
*Attorneys for Defendant Cartan Tours, Inc.*

H. Christopher Boehning
Daniel H. Levi
Andrew C. Finch
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel: 212.373.3000
Fax: 212.757.3990
*Attorneys for Defendant Infront Sports & Media*

1  W. West Allen
   LEWIS ROCA ROTHGERBER CHRISTIE
2  LLP                                    Joshua H. Epstein
3  3993 H. Hughes Parkway, Suite 600      DAVID & GILBERT LLP
   Las Vegas, NV 89169                    1740 Broadway
4  Tel: 702.949.8200                      New York, New York 10019
   Fax: 702.949.8398                      Tel: 212.468.4869
5  *Attorneys for Defendant SportsMark*   Fax: 212.468-4888
   *Management Group, Inc.*               *Attorneys for Defendant SportsMark*
6                                         *Management Group, Ltd.*

7                                         Michael B. Carlinsky
8  Pat Lundvall                           Steig D. Olson
   Kristen T. Gallagher                   Sami H. Rashid
9  McDONALD CARANO WILSON LLP             QUINN EMANUEL URQUHART &
   2300 W. Sahara Avenue, Suite 1200      SULLIVAN, LLP
10 Las Vegas, NV 89102                    51 Madison Avenue, 22nd Floor
   *Attorneys for Defendant Federation*   New York, New York 10010
11 *Internationale Football Association*  *Attorneys for Defendant Federation*
12                                        *Internationale Football Association*

13

14

15                    /s/ Will Lemkul
        An Employee of MORRIS, SULLIVAN, LEMKUL & PITEGOFF , LLP
16

17

18

19

20

21

22

23

24

25

26

27

28

                                  2